**UNITED STATED BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
**Honorable Howard R. Tallman**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **CHARLES RILEY and** | ) | **Case No. 09-27132 HRT** |
| **STEPHANIE RILEY,** | ) | **Chapter 7** |
| | ) | |
| **Debtors.** | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | **Adversary No. 10-01780 HRT** |
| **UNITED STATES TRUSTEE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CHARLES RILEY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

**<u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>**

This matter came before the Court for trial on the Complaint filed by the Plaintiff, the United States Trustee (the "UST"), seeking denial of discharge of the Defendant, Debtor Charles Riley ("Riley"), under 11 U.S.C. § 727(a)(2), (3), (4), and/or (7). Following a two-day trial held on June 26 and 27, 2013, and written closing arguments submitted on July 22, 2013 (docket #119), August 13, 2013 (docket #122), and August 26, 2013 (docket #124), the Court took the matter under advisement. The Court is now prepared to rule, and hereby finds and concludes as follows.

**BACKGROUND**

Riley, along with his wife, Stephanie Riley (together, the "Debtors"), filed their voluntary Chapter 7 bankruptcy petition on August 20, 2009, with the assistance of their attorney, Philipp Theune ("Theune"). The case was assigned case number 09-27132 HRT, and Stephen Peters ("Peters") was appointed as Chapter 7 Trustee. The next day, August 21, 2009, Riley caused his wholly-owned corporation, High Performance Real Estate, Inc. ("HPRE"), to file a voluntary Chapter 7 bankruptcy petition, with the assistance of attorney Adam Bowers ("Bowers"). HPRE's case was assigned case number 09-27266 HRT, and David Lewis ("Lewis") was appointed as Chapter 7 Trustee.

Riley signed the schedules in the Debtors' individual case and the schedules in HPRE's case under penalties of perjury. The Debtors' individual schedules did not disclose that Riley

FINDINGS OF FACT AND CONCLUSIONS OF LAW
Adversary No. 10-01780 HRT

was a member and 50% owner of BCB Capital, LLC ("BCB").  HPRE's schedules did not disclose that from May 25, 2005, to January 29, 2009, HPRE, acting through Riley, transferred $1,621,014 to BCB, for no or inadequate consideration.  Of that amount, $348,044 was transferred within two years prior to HPRE's bankruptcy filing, and $17,032 was transferred within one year prior to HPRE's bankruptcy filing.  Further, HPRE's schedules did not disclose that HPRE, acting through Riley, transferred $210,550 to Riley's parents, Clark and Judy Riley ("Riley's Parents").  Of that amount, $75,200 was transferred within two years prior to HPRE's bankruptcy filing, and $6,000 was transferred within one year prior to HPRE's bankruptcy filing.  The UST asserts that Riley caused the transfers to BCB and to Riley's Parents to be made, and omitted those transfers from HPRE's schedules, with the intent to hinder, delay, or defraud creditors of HPRE and/or the bankruptcy trustee.

One of HPRE's largest creditors was Paul Ducklow ("Ducklow"), who, on September 22, 2008, in Jefferson County, Colorado District Court (the "State Court"), filed a breach of contract and fraud lawsuit against Riley and HPRE, case number 2008 CV 004158 (the "Ducklow Litigation").  At the time that the Debtors and HPRE filed their bankruptcy petitions, Ducklow's motion for summary judgment was pending before the State Court.  On September 8, 2009, Ducklow filed motions for relief from stay in both Riley's and HPRE's bankruptcy cases (docket #12 in case no. 09-27132 HRT, docket #9 in case no. 09-27266 HRT), seeking to allow the Ducklow Litigation to go forward in the State Court.  Riley and HPRE objected, but this Court ultimately granted the requested relief.

On September 29, 2009, Lewis conducted the § 341 meeting of creditors in the HPRE case.  Riley attended and testified, under oath, on behalf of HPRE.  Riley stated that HPRE's schedules were accurate.  During the meeting, Lewis requested that Riley and HPRE provide certain financial statements and other documents evidencing HPRE's transactions and financial condition.  In response to Lewis's request, Riley forwarded to Bowers, who forwarded to Lewis, certain documents (the "Lewis Documents"), including (1) a document dated October 2, 2009, which purported to be the HPRE Profit & Loss Detail for January 1 through October 2, 2009; (2) a two-page document dated October 2, 2009, which purported to be the HPRE Balance Sheet Detail for October 2, 2009 (the "2-Page Balance Sheet"); and (3) three sample HPRE Investment Agreements.  None of the Lewis Documents included any reference to or listing of transfers to BCB or to Riley's Parents.  Specifically, the 2-Page Balance Sheet did not include any reference to BCB or to Riley's Parents.  The 2-Page Balance Sheet listed total assets and the total of liabilities and equity as a negative amount, ($2,177,753.63).

On October 2, 2009, Peters conducted the § 341 meeting of creditors in Riley and his wife's individual case.  Riley attended and testified, under oath, that his individual schedules were accurate.  During the meeting, Peters admonished Riley about omissions in the Debtors' schedules and statement of financial affairs, including the Debtors' failure to list Riley's ownership interest in and involvement with BCB.  Peters emphasized the need for the Debtors to disclose all transactions called for on the schedules and statement of financial affairs, no matter

FINDINGS OF FACT AND CONCLUSIONS OF LAW
Adversary No. 10-01780 HRT

how trivial those transactions may appear. Counsel for the UST was in attendance at the § 341 meeting, and asked Riley if there would be any revisions to HPRE's schedules, based on Peters's statements about the need for full disclosure. Riley stated, "You know, I'll take a second look at it and see. Not to my recollection." Notwithstanding that statement, at no time within the next two years did Riley contact Bowers to discuss any amendments that might be appropriate to HPRE's schedules, such as the disclosure of the transfers to BCB or to Riley's Parents.

Meanwhile, the Ducklow Litigation proceeded in State Court. A jury trial was held from December 15 through 21, 2009. At the conclusion of the trial, the jury returned its verdict, finding in favor of the Ducklows on their claims for breach of contract, breach of fiduciary duty, fraud or false representation, and nondisclosure/concealment. The jury awarded the Ducklows $1,915,348.00 in actual damages on the contract claims and $1.00 in actual damages on the tort claims. The jury also awarded the Ducklows punitive damages in the amount of $287,302.00, which the State Court remitted under Colo. Rev. Stat. § 13-21-102 (providing that the amount of punitive damages may not exceed the amount of actual damages).[1]

In July and August, 2010, the UST conducted a Rule 2004 examination of Riley. In the course of that examination, on August 4, 2010, Riley provided to the UST various financial documents (the "UST Documents"), including printouts from Quickbooks records of HPRE's financial activity from 2006 through 2009. Included in the UST Documents was an eight-page balance sheet purporting to set forth HPRE's financial condition as of December 31, 2009 (the "8-Page Balance Sheet"). The 8-Page Balance Sheet differed significantly from the 2-Page Balance Sheet Riley had earlier provided as part of the Lewis Documents. Specifically, the 8-Page Balance Sheet included a $1,621,014.68 asset labeled as "BCB Operating" and included a negative liability in the amount of ($201,550.00) as "due to/from Clark+Judy Riley." The 8-Page Balance Sheet listed total assets and the total of liabilities and equity as a positive number, $10,717,890.11. Also included in the UST Documents were two printouts of transactions by account, one of which listed HPRE's transfers to BCB and one of which listed HPRE's transfers to Riley's Parents. The UST provided the UST Documents to Lewis.

On August 20, 2011, Lewis filed three adversary actions in the HPRE bankruptcy case:

- *Lewis v. BCB Capital, LLC*, Adversary Proceeding No. 11-01576 HRT, seeking to recover the sum of $1,622,000, as a fraudulent transfer. On March 6, 2012, this Court entered default judgment in favor of Lewis and against BCB in the amount of $1,621,014.68.

---

[1] Enforcement and collection on the Ducklows' judgment remains stayed, pursuant to this Court's Order Granting Relief from Stay (docket #27 in case #09-27132-HRT).

FINDINGS OF FACT AND CONCLUSIONS OF LAW
Adversary No. 10-01780 HRT

- *Lewis v. Clark Riley and Judy Riley*, Adversary Proceeding No. 11-01577 HRT, seeking to recover the sum of $201,000, as a fraudulent transfer.  This case remains pending and is set for trial to take place October 15, 2013.

- *Lewis v. William Sullivan*, Adversary Proceeding  No. 11-01578 HRT, seeking to recover the sum of $102,794, as a fraudulent transfer.  Lewis voluntarily dismissed this case on September 10, 2012.

On October 22, 2010, the UST timely filed the above-captioned complaint in Riley's individual case, objecting to the entry of Riley's discharge under 11 U.S.C. § 727(a)(2), (3), (4), and/or (7).  Riley, through Theune, filed an answer denying the material allegations of the complaint.  But, Riley failed to respond to the UST's discovery requests and failed to respond to the UST's Motion for Sanctions (docket #27), as a result of which this Court entered an order striking Riley's answer and entering default judgment in favor of the UST.  Riley replaced Theune with his current counsel, who filed a Motion to Reconsider (docket #39), which this Court granted by order entered May 24, 2012 (docket #80), after the parties engaged in extensive discovery and presented evidence at a hearing held April 18 and 20, 2012.  On April 13, 2012, less than one week before the evidentiary hearing on Riley's Motion to Reconsider, Riley caused HPRE to file an amended statement of financial affairs, listing the transfers to BCB and to Riley's Parents.

## DISCUSSION

Section 727(a) of the Bankruptcy Code provides that the Court shall grant a debtor a discharge, unless:

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed–
    (A) property of the debtor, within one year before the date of the filing of the petition; or
    (B) property of the estate, after the date of the filing of the petition;
(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
(4) the debtor knowingly and fraudulently, in or in connection with the case--
    (A) made a false oath or account;
    . . . . ; or

FINDINGS OF FACT AND CONCLUSIONS OF LAW
Adversary No. 10-01780 HRT

> (D) withheld from an officer of the estate entitled to possession under this title,
> any recorded information, including books, documents, records, and papers,
> relating to the debtor's property or financial affairs;
>
> . . . .
>
> (7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this
> subsection, on or within one year before the date of the filing of the petition, or during
> the case, in connection with another case, under this title or under the Bankruptcy Act,
> concerning an insider[.]

11 U.S.C. § 727(a)(2)-(7). The Court will discuss, in turn, each subsection, as it relates to
Riley's individual case or the HPRE case of which Riley is in insider.[2]

### § 727(a)(2)

To deny Riley's discharge under § 727(a)(2)(A), the UST must show by a preponderance
of the evidence that: "(1) the debtor transferred, removed, concealed, destroyed, or mutilated, (2)
property of the estate, (3) within one year prior to the bankruptcy filing, (4) with the intent to
hinder, delay, or defraud a creditor." *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1293
(10th Cir. 1997).

Here, the UST has not identified specific transfers of Riley's individual property that
took place within one year prior to his filing of his individual bankruptcy case. Instead, the UST
points to HPRE's transfer of $17,032 to BCB and $6,000 to Riley's Parents, within one year
prior to HPRE's bankruptcy filing. Because Riley is an insider of HPRE, his actions in relation
to that case may form the basis for denial of his individual discharge. *See* 11 U.S.C. § 727(a)(7).

There is no question that HPRE, acting through Riley, made the transfers to BCB and to
Riley's Parents. Nor is there any question that the funds transferred were property of HPRE, the
debtor in case number 09-27266 HRT. The only disputed element is whether Riley caused the
transfers to be made with the intent to hinder, delay, or defraud a creditor.

Courts have identified a number of circumstances supporting a conclusion that a debtor
acted with the requisite intent to hinder, delay, or defraud a creditor. As this Court has
previously held, the circumstances include the following:

1)      the lack or inadequacy of consideration;
2)      the family, friendship or close associate relationship between the parties;

---

[2] Riley does not dispute that he is an insider of HPRE, and the Court finds that he is an
insider, as that term is defined in the Bankruptcy Code. Riley served as President of HPRE and
owns 100% of its stock. *See* 11 U.S.C. § 101(31)(B) (defining "insider" of a corporation).

FINDINGS OF FACT AND CONCLUSIONS OF LAW
Adversary No. 10-01780 HRT

3)      the retention of possession, benefit or use of the property in question;
4)      the financial condition of the party sought to be charged both before and after the transaction in question;
5)      the existence of a pattern or series of transactions after the onset of financial difficulties, or pendency or threat of suits by creditors; and
6)      the general chronology of the events and transactions under inquiry.

*BTE Concrete Formwork, LLC v. Arbaney (In re Arbaney)*, 345 B.R. 293, 300-01 (Bankr. D. Colo. 2006) (internal quotations and citations omitted).  "Any of these factors alone may be sufficient to find an intent to hinder, delay, or defraud creditors; the accumulation of several factors indicates strongly that the debtor possessed the requisite intent."  *Hughes v. Wells (In re Wells)*, 426 B.R. 579, 588-89 (Bankr. N.D. Tex. 2006) (citations omitted).

Here, the applicable circumstances support a finding that Riley caused HPRE to make the transfers to BCB and to Riley's Parents with the requisite intent to defraud.  First, HPRE did not receive any consideration, at least for the transfers to BCB made within one year prior to HPRE's bankruptcy filing.[3]  Second, the recipients of the transfers were made to family members (Riley's Parents) or to those with whom Riley had a close associate relationship (his business partners in BCB).  Third, Riley may have received a benefit from the transfers, at least the transfers to BCB, an entity owned by Riley and his friends and business partners, which was able to meet its obligations to its creditors with the funds received from HPRE.  Fourth, at the time of the transfers the financial condition of both BCB and HPRE was poor.  HPRE's transfers of funds to BCB prevented HPRE from meeting its obligations to its own creditors, including Ducklow.  Fifth, the transfers to BCB and to Riley's Parents were part of an ongoing series of transfers of funds after the onset of financial difficulties caused initially by the housing market bubble collapse and exacerbated by the transfers HPRE made without consideration.  Finally, the general chronology of events and transactions supports an inference of fraud, particularly the chronology of transfers from HPRE to BCB, as discussed further below.

The Court has reviewed the general chronology of the transfers from HPRE to BCB, as shown in the balance sheet detail included in the UST Documents, dating from January of 2004. Between January 2004 and May 2006, the amounts transferred between BCB and HPRE varied. During that period, at some times, HPRE's records showed a net loss, and at other times, HPRE's records showed a net gain.  One could make an argument that the transfers made during that time period were simply cases of sloppy recordkeeping and poor observance of corporate formalities, with relatively little harm done to either entity or either entity's creditors.  Perhaps,

---

[3]  Riley has argued that the transfers to Riley's Parents were made for consideration.  The Court does not decide at this time whether consideration was received for those transfers, given the pending matter of *Lewis v. Clark Riley and Judy Riley*, Adversary Proceeding No. 11-01577 HRT, set for trial on October 15, 2013.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
Adversary No. 10-01780 HRT

prior to 2006, the principals of BCB and HPRE held a good faith belief that each entity would be repaid the amounts due, when the properties were sold. But, from late 2006 forward, HPRE's records showed a substantially increasing balance owed from BCB. At the end of 2006, HPRE's records showed that BCB owed HPRE $855,612.27. By that time, 200 of BCB's 250 properties had been sold, with the remaining 50 not likely to sell at a profit (if at all), and the overall real estate market was not improving. At the end of 2007, HPRE's records showed that BCB owed HPRE $1,570,997.26. By the end of 2007, it was clear that BCB would not be able to repay any additional amounts loaned or advanced to it by HPRE. Riley's continuing to cause HPRE to transfer funds to BCB in 2008 demonstrates a level of disregard for HPRE's creditors that rises to the level of willful blindness to the problems the transfers caused. At a minimum, Riley's behavior was reckless, which is sufficient to support a finding of intent to defraud, hinder, or delay. *See Sholdra v. Chilmark Financial LLP (In re Sholdra)*, 249 F.3d 380, 383 (5th Cir. 2001) (holding that "'a pattern of reckless and cavalier disregard for the truth [supports a finding of] fraudulent intent'" under § 727(a)(2)) (quoting *Economy Brick Sales, Inc. v. Gonday (In re Gonday)*, 27 B.R. 428, 432 (Bankr. M.D. La. 1983)); *Massey-Ferguson Credit Corp. v. Pettigrew (In re Pettigrew)*, 955 F.2d 49, 1992 WL 26804 (10th Cir. Feb. 13, 1992) (unpublished) (same).

The Court has also considered that the transfers to BCB and to Riley's Parents were concealed, in that they were omitted from HPRE's bankruptcy schedules and from the 2-Page Balance Sheet produced as part of the Lewis Documents. Riley explained that he created the 2-Page Balance Sheet because he wanted to present to Lewis a more accurate picture of HPRE's financial situation, one that did not include all of the real estate that had been turned over to lenders or was otherwise without value to HPRE's bankruptcy estate. Riley also testified that he created an additional set of books as a backup, and as a result of the departure of HPRE's bookkeeper, Monja. Riley's explanations differed at different times in his testimony and at different times that he testified, and the Court does not find his explanations credible. To the extent that Riley was trying to be helpful in erasing the real estate from HPRE's books, he went too far in erasing the transfers to BCB and to Riley's Parents. Riley argues that the transfers were revealed in HPRE's tax returns, which were provided to Lewis. But, those tax returns did not consistently and clearly list the transfers, and at any rate such opaque disclosure is insufficient to overcome Riley's decision to erase the transfers from the financials included in the Lewis Documents and to omit them from HPRE's schedules and statement of financial affairs. Overall, Riley's creation of the 2-Page Balance Sheet evidences an intent to conceal the transfers, which supports a finding that the transfers were made with the intent to defraud, or hinder and delay HPRE's creditors, particularly Ducklow.

Considering the above factors, the Court finds that the UST has established a prima facie case that Riley caused HPRE to transfer funds to BCB and to Riley's Parents, which funds were property of HPRE, within one year prior to HPRE's bankruptcy filing, with the intent to hinder, delay, or defraud HPRE's creditors, including Ducklow.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
Adversary No. 10-01780 HRT

Riley has attempted to rebut the UST's charges of intent to defraud by focusing on the funds he invested into HPRE, which, Riley argues, he was not legally obligated to invest. Between 2007 and 2008, Riley infused $765,179.50 of revenue into HPRE, which revenue came from personal coaching and "wholesaling" houses. Riley argues that he could have set up separate businesses to receive that income, instead of infusing that income into HPRE. But, as the UST points out, HPRE did not record these infusions as capital investments from Riley. Instead, the infusions were recorded as HPRE income, supporting a conclusion that Riley's actions were taken on behalf of HPRE, not on behalf of any separate business operated by Riley. This Court disagrees that Riley had no duty to deposit the funds received from personal coaching and wholesaling houses into HPRE. But, even if the Court were to find that Riley invested unrelated, personal funds into HPRE at a time that HPRE was struggling financially, the amount invested is less than the overall amount transferred to BCB and to Riley's Parents, over time, dating back to at least 2006. Riley's subsequent infusions of income are the proverbial "day late and a dollar short," and are insufficient to negate the inference of intent to defraud, hinder, or delay creditors that is shown in the transfers to Riley's Parents and to BCB.

The Court finds that the UST has met its burden of proof by showing, by a preponderance of the evidence, that in connection with the HPRE case of which Riley is an insider, Riley committed an act specified in § 727(a)(2), in that Riley transferred HPRE's property, within one year prior to the filing of HPRE's bankruptcy petition, with the intent to hinder, delay, or defraud one or more creditors of HPRE. Riley's discharge is therefore subject to denial under § 727(a)(7).

### § 727(a)(3)

To deny Riley's discharge under § 727(a)(3), the UST must show by a preponderance of the evidence that Riley "failed to maintain and preserve adequate records and that the failure made it impossible to ascertain his financial condition and material business transactions." *In re Brown*, 108 F.3d at 1295. As with the above subsection, the UST focused not on Riley's individual records, but on the records of HPRE, of which Riley is an insider.

HPRE did maintain Quickbooks records from which parties and this Court could ascertain its financial condition, but Riley did not initially produce those Quickbooks records to HPRE's Trustee, Lewis. Instead, Riley produced the Lewis Documents, which included the 2-Page Balance Sheet. The 2-Page Balance Sheet contained no mention of HPRE's transfers to BCB or to Riley's Parents. Had Riley produced only the Lewis Documents, this Court might have little difficulty finding that the UST had established a prima facie case for failure to maintain and preserve adequate records to ascertain HPRE's material business transactions. HPRE's transfers to BCB and to Riley's Parents were material transactions.

But, Riley ultimately did produce more detailed records to the UST, in August of 2010. The UST Documents contained the 8-Page Balance Sheet, which gave parties and the Court a

FINDINGS OF FACT AND CONCLUSIONS OF LAW
Adversary No. 10-01780 HRT

fuller picture of HPRE's financial condition and material business transactions.  Because HPRE did maintain the detailed Quickbooks records that were included in the UST Documents, and because Riley eventually turned over those records to the UST, this Court cannot find that HPRE failed to maintain and preserve adequate financial records, sufficient to support a denial of discharge under § 727(a)(3).  Riley's delay in producing HPRE's records may support denial of his discharge under other applicable sections of § 727(a), as discussed above and below.  But, given the eventual disclosure, the Court finds that the UST has not established a prima facie case for denial of Riley's discharge under § 727(a)(7), incorporating § 727(a)(3).  The Court will therefore enter judgment in favor of Riley on the UST's § 727(a)(3) claim.

### § 727(a)(4)

To deny Riley's discharge under § 727(a)(4), the UST must show by a preponderance of the evidence that Riley "knowingly and fraudulently made an oath and that the oath relates to a material fact."  *In re Brown*, 108 F.3d at 1294.  Here, as in *Brown*, it is undisputed that Riley made incorrect entries on his individual schedules and on HPRE's bankruptcy schedules and that Riley made oaths upon them. As in *Brown*, the crux of the dispute is whether the oaths were knowing and fraudulent and relate to a material fact.

The United States Court of Appeals for the Seventh Circuit has held that:

[t]o find the requisite degree of fraudulent intent, the court must find the debtor knowingly intended to defraud the trustee, or engaged in such reckless behavior as to justify the finding of fraud.  The trustee may prove the debtor's fraud by evidence of the debtor's awareness of the omitted asset and by showing that the debtor knew that failure to list the asset could seriously mislead the trustee or that the debtor acted so recklessly in not reporting the asset that fraud is implied.  The bankruptcy court's finding of fraudulent intent may be based on inferences drawn from a course of conduct.  Additionally, fraudulent intent may also be inferred from all of the surrounding circumstances.

*In re Yonikus*, 974 F.2d 901, 905 (7th Cir.1992) (citations omitted).

Here, the Court finds that Riley was aware of the transfers to BCB and to Riley's Parents. The transfers were included in HPRE's Quickbooks records, which Riley used to prepare HPRE's tax returns for the years 2006, 2007, and 2008, in the weeks leading up to HPRE's bankruptcy filing.  HPRE included the transfers in the tax returns, although not clearly enough to provide parties in this case adequate notice of them.  The omission from HPRE's schedules and statement of financial affairs of the transfers to BCB and to Riley's Parents was no accident. Riley admitted as much during his 2004 examination, stating that he thought about it and decided not to disclose the transfers.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
Adversary No. 10-01780 HRT

Rather than provide HPRE's lawyer (Bowers) and bankruptcy trustee (Lewis) with HPRE's actual Quickbooks records, Riley created a second set of books designed to show that HPRE had no assets. Riley testified that he did so in order to prevent confusion on Lewis's part, which confusion could have arisen had HPRE's records appeared to show that HPRE owned valuable real estate, when that was not the case. But in "scrubbing" the worthless real estate from HPRE's books, Riley went too far when he removed the transfers to BCB and to Riley's Parents. Riley was not only attempting to "help" Lewis understand that HPRE had no realizable assets; he was also attempting to convince Ducklow that HPRE had no assets, in the hopes that Ducklow would abandon the Ducklow Litigation. Only after the Ducklow Litigation was resolved, with a verdict that was favorable to Riley on the fraud and other tort counts, did Riley come forward to provide information about the transfers to BCB and to Riley's Parents to the UST, who then provided that information to Lewis. Only after the UST filed the above-captioned adversary proceeding did HPRE amend its statement of financial affairs in order to list the transfers. The Court finds that Riley's actions in omitting the transfers to BCB and to Riley's Parents from HPRE's schedules and statement of financial affairs and from the Lewis Documents, and failing to reveal the existence of the transfers until after the Ducklow Litigation was completed, was, at a minimum, sufficiently reckless disregard of the truth and of bankruptcy disclosure requirements that fraud is implied. *See In re Yonikus*, 974 F.2d at 905; *McVay v. Phouminh (In re Phouminh)*, 339 B.R. 231, 242-43 (Bankr. D. Colo. 2005).

"The subject matter of a false oath is 'material,' and thus sufficient to bar discharge if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir.1984), *cited in Calder v. Job (In re Calder)*, 907 F.2d 953, 955 (10th Cir. 1990). Here, the transfers to BCB and to Riley's Parents meet several of the criteria to qualify as material. The transfers show how HPRE conducted business, and they also show the disposition of a substantial portion of the money invested into HPRE. Lewis brought two adversary proceedings to recover the transfers, one of which resulted in a default judgment against BCB in the amount of $1,621,014.68, and one of which remains pending. The fact that the judgment against BCB may prove to be uncollectible, and few assets may ultimately be distributed to HPRE's creditors, is irrelevant to the determination of whether the nondisclosures were material. A debtor may not escape a denial of discharge under § 727(a)(4)(A) by asserting that the omitted information concerned assets that he believed to be worthless. *In re Calder*, 907 F.2d at 955. The Court finds that the omission of the transfers to BCB and to Riley's Parents constitutes omissions of material facts.

Considering the above factors, the Court finds that the UST has established a prima facie case that Riley, in connection with the HPRE case of which he was an insider, knowingly and fraudulently made a false oath and that the oath relates to a material fact.

Riley argues that he had no reason to conceal the transfers from Lewis and his creditors, and he blames his lawyer, Theune, and HPRE's lawyer, Bowers, for the omissions. But, the

FINDINGS OF FACT AND CONCLUSIONS OF LAW
Adversary No. 10-01780 HRT

Court is not persuaded by Riley's argument.  Certainly, Bowers had relatively little experience at the time of HPRE's bankruptcy filing and charged a relatively small fee for his work.  But, the Court found Bowers's testimony to be credible, and the Court specifically finds that Bowers did an adequate job with the information Riley gave him.  Riley did not tell Bowers about the transfers to BCB or to Riley's Parents.  Riley did not give Bowers the financial information contained in the UST Documents that would have revealed those transfers.  Instead, Riley gave Bowers the same information he gave Lewis: a whitewashed version of HPRE's financial history, as set forth in the Lewis Documents.  Bowers testified that HPRE's bankruptcy was filed in order to stop the Ducklow Litigation, or at least obtain a more favorable venue for it, and also in the hopes that Ducklow would see that HPRE had no assets and would conclude that it was not worth pursing.  The filing was therefore a litigation tactic, one that Riley took too far by concealing information on the transfers to BCB and to Riley's Parents.  Perhaps a more experienced attorney would have been able to talk Riley out of pursuing such a litigation tactic, or could have asked sufficiently probing questions to uncover the existence of the transfers, but this Court does not fault Bowers for failing to see that Riley was hiding information from him, from Lewis, and from this Court.  At any rate, a party who voluntarily chooses an attorney as his representative "cannot now avoid the consequences of the acts or omissions of this freely selected agent."  *Link v. Wabash R. Co.*, 370 U.S. 626, 633–34 (1962).

The Court is mindful of the harsh effect of a judgment denying a debtor's discharge, particularly here, where Riley's debts are large, and collection efforts would undermine Riley's ability to support his wife and minor children.  Riley has testified that a judgment denying his discharge would be "a financial death sentence."  The Court does not impose such a judgment lightly.  But, the Court cannot condone Riley's actions in the Debtors' and HPRE's bankruptcy cases.  The United States Court of Appeals for the First Circuit has emphasized the importance of debtors' compliance with disclosure requirements applicable in bankruptcy cases:

> [T]he very purpose of certain sections of the law, like 11 U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs.  The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction.  As we have stated, "[t]he successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure."  Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight.

*Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir.1987) (citations omitted).  Here, Riley sought the shelter of the bankruptcy code on behalf of HPRE, as a litigation tactic, and in the course of pursing that tactic, he played fast and loose with the reality of HPRE's affairs.  Riley did not put forth complete, truthful, reliable information at the outset of HPRE's bankruptcy

FINDINGS OF FACT AND CONCLUSIONS OF LAW
Adversary No. 10-01780 HRT

proceedings.  Instead, the UST had to engage in significant effort to drag the simple truth into the glare of daylight.  The Court concludes that the UST has met its burden of proof by showing, by a preponderance of the evidence, that in connection with the HPRE case of which Riley is an insider, Riley committed an act specified in § 727(a)(4), in that Riley knowingly and fraudulently made a false oath and that the oath relates to a material fact.  Riley's discharge is therefore subject to denial under § 727(a)(7).

**CONCLUSION**

For the reasons stated above, the Court finds that the UST is entitled to a judgment in his favor, denying Riley's discharge under 11 U.S.C. § 727(a)(7), for acts Riley committed in connection with the HPRE case of which Riley is an insider, in violation of 11 U.S.C. §§ 727(a)(2) and (a)(4).  The Court will enter a separate judgment to this effect.

Dated this ___20th___ day of September, 2013.

BY THE COURT:

Howard R. Tallman, Chief Judge
United States Bankruptcy Court